**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
  david@daviderikson.com
S. Ryan Patterson (SBN 279474)
  ryan@daviderikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone:   323.465.3100
Facsimile:   323.465.3177

**JEFFREY S. GLUCK** (SBN 304555)
  gluckmanagement@gmail.com
123 N. Kings Rd., Suite 6
Los Angeles, California 90048
Telephone:   (917) 678-8776

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JOSEPH TIERNEY, professionally known as "Rime," an individual;<br><br>Plaintiff,<br><br>v.<br><br>MOSCHINO S.P.A., an Italian corporation; JEREMY SCOTT, an individual; and DOES 1-10 inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT, VIOLATION OF THE LANHAM ACT, VIOLATION OF THE RIGHT OF PUBLICITY, UNFAIR COMPETITION, AND NEGLIGENCE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Joseph Tierney, referred to by his pseudonym "Rime" (or "Artist") hereby complains against Defendants Moschino S.p.A., Jeremy Scott, and Does 1-10 inclusive (collectively referred to as "Defendants"), as follows.

## SUMMARY OF THE CASE

1. Plaintiff Rime is a well-known artist. Defendants Moschino and Jeremy Scott—two household names in high-fashion—inexplicably placed Rime's art on their highest-profile apparel without his knowledge or consent. The artwork is shown below, left. The apparel is shown in the other three images. Second from left is Katy Perry at the Metropolitan Museum of Art's "Met Gala." Next is supermodel Gigi Hadid on the runway.

   

And at right is Mr. Scott himself, also at the Met Gala.

2. In case consumers entertained any doubt that the artwork in question was Rime's, Defendants also added Rime's name and fake signature on the clothing, in advertisements, and in media photographs (as shown below).

 

ERIKSON LAW GROUP
200 NORTH LARCHMONT BOULEVARD
LOS ANGELES, CALIFORNIA 90004
Tel 323.465.3100 □ Fax 323.465.3177

If this literal misappropriation were not bad enough, Moschino and Jeremy Scott did their own painting over that of the Artist—superimposing the Moschino and Jeremy Scott brand names in spray-paint style as if part of the original work.

3. The idea of putting graffiti—or "street" art—on ultra-expensive clothing was meant to provoke and generate publicity for the brand/designer. Towards that end, Defendants paid Ms. Perry to advertise and display the clothing at the Gala, a high-profile party thrown annually by one of the nation's most venerable institutions, the Metropolitan Museum of Art in New York City. Not only did Ms. Perry and Defendant Scott advertise, wear, and display the clothing at the event, they arrived at the event in a spray painted Rolls Royce, and even carried around Moschino branded cans of fake spray paint during the event, as if Defendants were responsible for the artwork.

4. And generate publicity it did. Ms. Perry was widely photographed in the clothing, as she always is. She even made a number of "worst dressed" lists as a result. Such notoriety was obviously the goal—given the calculated inappropriateness of the outfit to the occasion. Notably, Defendants deliberately and obnoxiously disobeyed a recommended dress code under which attendees were to stay within the museum's Chinese exhibition theme. The Defendants were obviously thrilled with how the episode played out, heavily promoting images of Ms. Perry wearing the clothing in their marketing, advertising, media and sales materials.

5. The only person harmed was Rime. Not only was his art exploited by Defendants, but his credibility as a graffiti artist was compromised by inclusion in such a crass and commercial publicity stunt. Rime has always chosen his commercial projects carefully. While he accepted Disney's invitation to reinterpret Mickey Mouse, and placed his original designs on Adidas and Converse footwear, Rime regularly declines corporate offers to license his work.

**JURISDICTION AND VENUE**

6. Plaintiff brings this action for copyright infringement (17 U.S.C. Section 101

et seq.); violation of Section 43(a) of Lanham Act (15 U.S.C. Section 1125(a)); unfair competition under California law; appropriation of name and likeness under California law; and negligence.

7. This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a)("supplemental jurisdiction") in that they are so related to the federal law intellectual property claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

8. Defendants are subject to the personal jurisdiction of the Court because they do reside or transact business in, have agents in, or are otherwise found in and have purposely availed themselves of the privilege of doing business in California and in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) because a substantial part of the events or omissions giving rise to the claims occurred in this District in that, *inter alia*, the clothing in question is and was offered for sale here, and because one or more Defendant is subject to personal jurisdiction here in that Jeremy Scott maintains an office in Los Angeles, and Moschino operates a store in Beverly Hills.

**THE PARTIES**

10. Plaintiff Joseph Tierney is, and at all times relevant herein has been a resident of Brooklyn, New York, and is a world-renowned artist, producing works under the pseudonym "Rime" since 1991. Tierney's work has been featured in high-profile museum exhibitions, including in the Museum of Contemporary Art in Los Angeles (MOCA), as part of the groundbreaking 2011 show "Art in the Streets," which Jeremy

Scott attended, as well as numerous art galleries in Los Angeles, New York, and Paris. In 2008, Tierney was honored as one of only four artists invited by Disney to create an officially sanctioned reinterpretation of the iconic Mickey Mouse character. Tierney was also invited by Adidas and Converse to create limited edition footwear bearing his original artwork. Highly sought after, Tierney has frequently rejected and declined other lucrative offers to lend his original artwork and signature to branded consumer products, carefully choosing only to participate in projects that align with his own brand and personal interests.

11. Defendant Moschino S.p.A. is a high-end apparel brand based in Italy, and among fashion's most prominent names. Moschino sells at its own boutique stores around the world—including New York, and in this district, in Beverly Hills—as well as through the world's highest-end department stores such as Saks Fifth Avenue in New York, and Harvey Nichols in London. The brand is extremely popular in Asia and the Middle East.

12. Defendant Jeremy Scott, an individual, is and at all times relevant herein has been a resident of Los Angeles, California. He is an independent fashion designer and the creative director for Moschino. On information and belief, Scott was responsible for the design of the infringing collection under the Moschino label. The basis for Plaintiff's belief that Mr. Scott is responsible for the designs in question is his position at Moschino, as well as media photographs, information posted on Moschino's website and social media accounts; and Jeremy Scott's social media accounts. Jeremy Scott has often been accused of committing copyright and trademark infringement in his designs.

13. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when the same has been ascertained. Plaintiff is informed and believes, and thereon alleges, that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by

their conduct.

14. Each of the Defendants acted as an agent for each of the other Defendants in doing the acts alleged, and each Defendant ratified and otherwise adopted the acts and statements performed, made or carried out by the other Defendants so as to make them directly and vicariously liable to the Plaintiff for the conduct complained of herein. Each Defendant is the alter ego of each of the other Defendants.

## GENERAL ALLEGATIONS

15. In 2012, Rime was invited by a property owner to create a giant mural, entitled "Vandal Eyes" covering the broad side of a building in Detroit (the "Mural").

16. Due to its artistic merit and Rime's reputation, the Mural attracted a great deal of positive attention in the art and design communities.

17. In 2013, Moschino hired independent fashion designer Jeremy Scott as its new creative director, publicly debuting his first official namesake Fall/Winter clothing and accessories collection for Moschino in February 2015, for the Fall/Winter 2015 fashion season. As part of that collection, Moschino and Scott released a capsule collection (the "Collection") featuring graphic designs (the "Designs") that included literal copies of images of the Mural. To add insult to injury, Moschino and Scott also included a forgery of Plaintiff's signature and Plaintiff's name "Rime" throughout the Collection.

18. On information and belief, the images used in the Collection and on the Designs were mechanical copies of the Mural, obtained and produced through the use of high-resolution photography.

19. While the Designs include mechanical copies of the Mural, Defendants added certain of their own graphic design over the Mural artwork. Needless to say, Plaintiff considers these embellishments to constitute defacement. One prominent such embellishment is the inclusion of the brand name "Moschino" made to appear as if it were part of the original work or giving the impression that the work was created for Moschino and/or Jeremy Scott, also amounting to a false representation that they rather than the

Plaintiff were the creators.

20.  The Collection was made available for sale extensively throughout the world, and garnered international attention during the February 2015 Moschino runway show in Milan when Moschino paid models to advertise and display the Collection. Moschino singled out and spotlighted the clothing bearing Plaintiff's artwork, selecting it as the grand finale—worn by supermodel Gigi Hadid to close out the show. Moschino again singled out and spotlighted the clothing when Katy Perry and Jeremy Scott appeared for Moschino at the high profile Met Gala in May 2015, for the purpose of publicly displaying the apparel that featured Plaintiff's artwork. Subsequent to the Met Gala, the Collection bearing Plaintiff's artwork, name, and false signature, as expected, garnered immense international publicity including the New York Times, CNN, Vogue, Vanity Fair, People, US Weekly, and was viewed extensively on social media. This publicity, a stunning success for the Moschino and Jeremy Scott brands, increased revenues and the value of each. In fact, on June 19, 2015, one month following the Met Gala, the New York Times published an article about Jeremy Scott and his spectacle at the Met Gala, which included an interview with Michelle Stein, the United States president of Aeffe, the Italian holding company that owns Moschino. who commented that Moschino's revenues have increased "10 times." According to the Wall Street Journal, Moschino's financial statements reveal a 16% increase in revenue for the first quarter of 2015, precisely the time period in which Moschino debuted the Collection featuring Plaintiff's artwork.

21.  Upon discovery of Defendants' misappropriation of Plaintiff's work, Plaintiff urgently demanded that the Defendants cease their use, and remove the offending items from the marketplace. Despite assurances of cooperation and repeated requests for more time to respond, the infringing items are <u>still</u> widely advertised, promoted, and offered for sale —including even on Defendants' own websites and social media accounts, effectively continuing to republish and display the infringing items to a wide audience on a daily basis. Additionally, despite Plaintiff's demands, Jeremy Scott used and displayed

infringing items in global advertising and media campaigns for his upcoming documentary film, in the audio/visual trailer, and in the film itself.

22. Defendants benefitted from the misappropriation and infringement in a number of ways, including but not limited to the following: (i) they enjoyed the revenue and increased revenue from the sale and/or license of the Collection (ii) the success of the Collection increased the value of the Moschino brand, and (iii) the success of the Collection increased the value of the Jeremy Scott brand and reputation.

23. Plaintiff has been harmed by the misappropriation and infringement described above in a number of ways, including damage to Plaintiff's reputation and credibility in the art world based upon the perceived association with and endorsement of the Moschino and Jeremy Scott brands. In this latter regard, Plaintiff is diligent in controlling distribution channels of his work, because selection of such channels greatly affect an artist's reputation and the overall market for his work. Plaintiff does not make his original art available on the Internet or in retail stores, and like his target audience, generally eschews connections to commercial consumerism except in carefully selected instances. In particular, nothing is more antithetical to the outsider "street cred" that is essential to graffiti artists than association with European chic, luxury and glamour—of which Moschino is the epitome. To anyone who recognizes his work, Plaintiff is now wide open to charges of "selling out." Additionally, Jeremy Scott has previously been at the center of multiple high profile scandals in which he was accused of copying designs from other artists, and has since garnered a negative reputation amongst artists. As a result, the perceived association between the Plaintiff and Jeremy Scott has damaged Plaintiff's reputation and career.

24. Plaintiff brings this straightforward copyright infringement claim for misappropriation of his artwork. Because the misappropriation included and exploited signature (i.e. source-identifying) elements, including Plaintiff's own pseudonymous name and signature, as recognized by the public as associated with Plaintiff, Plaintiff also brings

trademark claims under the Lanham Act; and unfair competition, and appropriation of name and likeness claims under California law.

25.  Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, and wanton; committed with the intention of injuring Plaintiff, and depriving Plaintiff of his legal rights; was, and is, despicable conduct that subjects Plaintiff to a cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiff is entitled to an award of punitive or exemplary damages.

26.  Defendants' actions have caused, and will continue to cause, damage and irreparable harm to Plaintiff (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff, unless preliminarily and permanently enjoined and restrained by the Court.

**First Claim For Relief For Copyright Infringement**

**(By Plaintiff, Against All Defendants)**

27.  Plaintiffs incorporate herein by this reference paragraphs 1 through 26 as if set forth in full in this cause of action.

28.  The Mural is an original work of authorship and constitutes copyrightable subject matter under the laws of the United States. The image was fixed in a tangible medium of expression, as described above.

29.  At all times since the creation of the Mural, Plaintiff has complied with all aspects of the Copyright Acts of 1909 and 1976 and all other laws governing copyright, and secured the exclusive rights and privileges in and to the Mural. Plaintiff has at all times been the sole owner of all rights, title, and interest in and to the copyright in the Mural, and has applied for a federal registration from the Registrar of Copyrights.

30.  Subsequent to Plaintiff's creation of the Mural and (on information and belief) with full knowledge of the rights of Plaintiff, Defendants Moschino and Jeremy Scott infringed Plaintiff's copyright by copying, as described above, the artwork and placing such copied images on Moschino apparel, and by advertising, displaying, selling

1 and offering for sale said apparel in California, elsewhere in the United States, and abroad.

2     31. All of Defendants' acts were performed without the permission, license or consent of Plaintiffs.

4     32. By reason of Defendants' acts of copyright infringement as alleged herein, Plaintiff has suffered and will continue to suffer substantial damage to Plaintiff's business in the form of diversion of trade, loss of profits, and a dilution in the value of Plaintiff's rights and reputation, in part as described above, all in amounts that are not yet ascertainable but not less than the jurisdictional minimum of this court.

9     33. By reason of their infringement of Plaintiff's copyright as alleged herein, Defendants are liable to Plaintiff for the actual damages incurred by Plaintiff as a result of the infringement, and for any profits of Defendant directly or indirectly attributable to such infringement.

### Second Claim For Relief For Falsification, Removal and Alteration of Copyright Management Information in Violation of 17 U.S.C. § 1202
### (By Plaintiff, Against All Defendants)

34. Plaintiff incorporates herein by this reference paragraphs 1 through 33 as if set forth in full in this cause of action.

35. The Mural contained copyright management information protected under 17 U.S.C. § 1202(b), including Plaintiff's signature, and other source identifying elements.

36. Defendants Moschino and Jeremy Scott intentionally removed and/or altered the copyright management information contained in the Mural with the intent to induce, enable, facilitate, or conceal an infringement of Plaintiff's rights under the Copyright Act. On some of the infringing apparel, Defendants have replaced such information with false, altered, and inaccurate copyright management information, which falsely identifies one or more Defendants, or another person or entity, that has no copyright ownership interest as the owner of copyright in the Mural.

37. Defendants' conduct constitutes a violation of 17 U.S.C. § 1202(a), and

1202(b).

38. Defendants' falsification, removal and/or alteration of that copyright management information was done without Plaintiff's knowledge or authorization.

39. Defendants' falsification of said copyright management information was done by Defendants intentionally, knowingly, and with the intent to induce, enable, facilitate, or conceal Defendants' infringement of Plaintiff's copyright in the Mural. Defendants also knew, or had reason to know, that such removal and/or alteration of copyright management information would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiff's copyright in the Mural.

40. Plaintiff has sustained significant injury and monetary damages as a result of Defendants' wrongful acts as hereinabove alleged, and as a result of being involuntarily associated with Defendants. Plaintiff is at present unable to ascertain the full extent of the monetary damages Plaintiff has suffered by reason of said acts. In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable under 17 U.S.C. § 1203, Plaintiff will require an accounting from each Defendant of all monies generated from their wrongful falsification, removal and alteration of copyright management information.

41. In the alternative, Plaintiff may elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of not more than $25,000 from each Defendant for each violation of 17 U.S.C. § 1202.

**Third Claim For Relief for Unfair Competition Under Section 43(a) of**
**The Lanham Act (15 U.S.C. § 1125(a))**
**(By Plaintiff, Against All Defendants)**

42. Plaintiff incorporates herein by this reference paragraphs 1 through 41 as if set forth in full in this cause of action.

43. As described above, Defendants have falsely used Plaintiff's art pseudonym "Rime," trade name, and professional signature on various items throughout the

Collection, creating the impression that Plaintiff designed the *entire* Collection. Members of the public, including art world consumers and insiders, as well as the art press, have come to recognize Plaintiff's professional name, and his signature, as belonging to Plaintiff. Plaintiff's' signature and name have secondary meaning, as that term is understood in trademark law.

44. The goodwill and reputation associated with the Plaintiff's name and signature has continuously grown throughout the general public. Plaintiff's name and signature are now known throughout the United States, the State of California, and the world, as a source of origin for Plaintiff's respective artistic product.

45. Plaintiff has spent substantial resources successfully establishing his name and signature in the minds of consumers as associated with high quality artwork.

46. Plaintiff's name and signature is strong, fanciful, non-functional, distinctive, and inherently distinctive. Through Plaintiff's efforts in exhibiting his work for more than two decades, Plaintiff's signature elements and name have become distinctive of Plaintiff's artwork, and acquired secondary meaning among relevant consumers and the public generally.

47. Defendants produced and/or sold garments in interstate commerce that feature and include Plaintiff's name and signature. Certain pieces of the Collection include all of the signature elements described above, while certain pieces only feature Plaintiff's artwork, creating the overall impression that Plaintiff created the *entire* Collection.

48. Defendants' use of Plaintiff's name and signature is designed to create and does create the false and deceptive commercial impression that the Moschino garments and accessories are associated with and/or manufactured by Plaintiff. The use by Defendants of Plaintiff's name and signature is likely to cause confusion, mistake, or deception of purchasers as to the source of the goods; or as to Rime's endorsement of the goods.

49. Customers and potential purchasers are likely to be attracted to the Moschino pieces described herein, creating an initial interest in the goods upon seeing them and

creating a lasting appreciation, believing them to be associated with Plaintiff, thereby resulting in consumer confusion. Defendants' conduct will damage Plaintiff's ability to enjoy, maintain and exploit Plaintiff's hard-won brand recognition, and status as a leader and pioneer of graffiti art.

50. Although Plaintiff maintains the highest standard of quality, and specifically does not casually offer any original images for sale on clothing articles or other branded consumer goods. Plaintiff has no control over the type or quality of the goods provided by the Defendants. Goods of low quality, if associated with Plaintiff, will certainly damage Plaintiff's reputation.

51. In addition, Defendants' use of the Plaintiff's name and signature harms their distinctiveness by associating the with clothing items associated with high fashion marketing, and diminishing their ability to connote a single source of Plaintiff's respective artwork.

52. By Defendants' conduct alleged here, Defendants have wrongfully appropriated for themselves business and goodwill value that properly belongs to Plaintiff and that Plaintiff has invested time, money, and energy in developing.

53. By reason of Defendants' acts of unfair competition as alleged herein, Plaintiff has suffered and will continue to suffer substantial damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

54. By virtue of Defendants' acts hereinabove described, Defendants have committed, and are continuing to commit, unlawful, unfair, and fraudulent business acts in violation of, inter alia, 15 U.S.C. § 1125(a).

55. Defendants' acts of unfair competition in violation of 15 U.S.C. § 1125(a) have caused, and will continue to cause, damage and irreparable harm to Plaintiff (as described above) and are likely to continue unabated, thereby causing further damage and

1 irreparable harm to Plaintiff, and to the goodwill associated with Plaintiff's valuable and well-known trade dress and Plaintiff's business relationships, unless preliminarily and permanently enjoined and restrained by the Court.

56. Plaintiff has no adequate remedy at law and will suffer irreparable injury if Defendants are allowed to continue to engage in the wrongful conduct herein described.

57. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Plaintiff's rights. Plaintiff is therefore entitled to punitive damages.

**Fourth Claim For Relief for Unfair Competition Under**

**California Business And Professions Code §§ 17200 et seq.**

**(By Plaintiff, Against All Defendants)**

58. Plaintiff incorporates herein by this reference paragraphs 1 through 57 as if set forth in full in this cause of action.

59. Defendants, by means of the conduct described above, have engaged in, and are engaging in, unlawful, unfair, fraudulent and deceptive business practices under California Business and Professions Code §§ 17200 through 17203. These acts and practices undertaken by Defendants violate California Business & Professions Code § 17200 in that they are—as described above—unfair, fraudulent, and/or unlawful. Specifically, without limiting the generality of the foregoing, such acts and practices constitute violations of the Lanham Act, and are and were fraudulent in that: (a) Defendants seek to deceive consumers regarding the source, quality and origin of Defendants' goods and Defendants' association with Plaintiff, and (b) the general public and trade is likely to be confused regarding the business relationship between Plaintiff and Defendants. Further, without limiting the generality of the foregoing, the harm to Plaintiff and to members of the general public far outweighs the utility of Defendants' practices and, consequently, Defendants' practices constitute an unfair business act or practice within the meaning of Business and Professions Code § 17200. Further, without limiting

the generality of the foregoing, such acts by Defendants are unlawful in that they violate, inter alia, the following statutes and/or regulations: 15 U.S.C. § 1125 (Lanham Act) and 17 U.S.C. § 501 (copyright infringement).

60. Plaintiff has sustained, and will continue to sustain, serious and irreparable injury to his business and reputation, as a direct and proximate result of Defendants' conduct (as described above). Unless Defendants are enjoined by this Court, there is a substantial possibility that they will continue to engage in such unlawful, unfair, and deceptive business practices, for which Plaintiff is without an adequate remedy at law. Accordingly, Plaintiff is entitled to a preliminary injunction and permanent injunction against Defendants and their officers, directors, employees, agents, representatives, affiliates, subsidiaries, distributors, and all persons acting in concert with them, prohibiting them from engaging in further unlawful, unfair and/or fraudulent business practices.

61. As a direct result of Defendants' unlawful, unfair, fraudulent, and deceptive business practices, Defendants have received, and continue to receive, income and profits that they would not have earned but for their unlawful, unfair, and deceptive conduct and Plaintiff is entitled to disgorgement of such funds wrongfully obtained.

62. By reason of Defendants' acts of unfair competition as alleged herein, Plaintiff has suffered and will continue to suffer substantial damage to his business in the form of diversion of trade, loss of profits, and a dilution in the value of his rights and reputation, all in amounts which are not yet ascertainable but which are estimated to be not less than the jurisdictional minimum of this court.

63. Plaintiff is also entitled under the provisions of Business and Professions Code §17208 to an injunction prohibiting Defendants, and each of them, from engaging in any act, directly or indirectly, which constitute unlawful, unfair, and deceptive business practices.

64. In committing these acts of unfair competition, Defendants acted willfully, wantonly, and recklessly; and with conscious disregard for Plaintiff's rights. Plaintiff is

therefore entitled to punitive damages.

65. Defendants' conduct, if allowed to proceed and continue and/or let stand, will cause irreparable damage to Plaintiff's valuable business relationships and consumer relations and will require Plaintiff to undertake efforts to mitigate damage to such relations, all to Plaintiff's detriment. Further, such mitigation costs will require substantial time, effort, and expenditures by Plaintiff, all to Plaintiff's detriment.

## Fifth Claim For Relief For Unfair Competition Under

## California Common Law

## (By Plaintiff, Against All Defendants)

66. Plaintiff incorporates herein by this reference paragraphs 1 through 65 as if set forth in full in this cause of action.

67. The above-described conduct of Defendants constitutes unfair competition under the common law of the State of California.

68. As a result of the actions of Defendants, Plaintiff has been damaged in an amount to be proven at trial.

## Sixth Claim For Relief For Appropriation of Name and Likeness in Violation of

## California Civil Code §3344

## (By Plaintiff, Against All Defendants)

69. Plaintiff incorporates herein by this reference paragraphs 1 through 68 as if set forth in full in this cause of action.

70. Defendants, without Plaintiff's consent, invaded Plaintiff's right of publicity by using his name in connection with the marketing and sale of Moschino apparel and goods, and for the purpose of advertising, marketing and soliciting purchases of Moschino apparel and goods.

71. Plaintiff is informed and believes and thereon alleges that Defendants have unlawfully and unjustly profited from the acts herein alleged. Accordingly, Plaintiff is entitled to an award against Defendants for the recovery of any gains, revenue, profits and

1  advantages Defendants have obtained as a result of their unlawful conduct, as well as
2  Plaintiff's damages, attorneys' fees and costs.
3      72.   As a direct and proximate result of Defendants unauthorized use of the
4  names and likeness of Plaintiff, Plaintiff has been damaged in an amount to be determined
5  at trial, but exceeding the jurisdictional limitations of this court.
6      73.   Defendants continue the conduct alleged above. Unless and until enjoined
7  and restrained by order of this court, Defendants' continued use of Plaintiff's name and
8  likeness will cause Plaintiff great and irreparable injury in that the damage to his reputation
9  will continue unabated. Plaintiff has no adequate remedy at law for the injuries being
10 suffered in that they are impossible to quantify and a judgment for monetary damages will
11 not end the invasion of Plaintiff's privacy. Accordingly, Plaintiff is entitled to a temporary
12 restraining order, preliminary injunction and permanent injunction against Defendants, and
13 all persons acting in concert with them, prohibiting them from appropriating Plaintiff's
14 name and reputation.

**Seventh Claim For Relief For Negligence**

**(By Plaintiff, Against All Defendants)**

17     74.   Plaintiff incorporates herein by this reference paragraphs 1 through 73 as if
18 set forth in full in this cause of action.
19     75.   Defendants, and each of them, owed a duty of care to Plaintiff, as described
20 above.
21     76.   Defendants breached their duty of care to Plaintiff, and failed to exercise
22 reasonable care in that, *iner alia*, they failed to prevent injurious falsehoods from reaching
23 the public.
24     77.   As a proximate result of Defendants' negligence, Plaintiff has been damaged
25 in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

**PRAYER**

27     WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. That Plaintiff is awarded all damages, including future damages, that Plaintiff has sustained, or will sustain, as a result of the acts complained of herein, subject to proof at trial;

2. That Plaintiff is awarded his costs, attorneys' fees and expenses in this action;

3. That Plaintiff is awarded pre-judgment interest;

4. For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5. That Defendants be ordered to immediately recall and sequester inventories of the infringing products, and to supply accountings to Plaintiff's counsel;

6. That Defendants be ordered to deliver their entire inventories of infringing products to a mutually selected third party for supervised destruction;

7. That Defendants be ordered to file with this Court and serve upon Plaintiff's counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

8. That Defendants be adjudged to have engaged in unlawful, unfair and/or fraudulent business practices and unfair competition in violation of California Business and Profession Code §§ 17200 et seq.;

9. For disgorgement of all proceeds, and restitution of all monies received by Defendants as the result of their wrongful conduct, including copyright and trademark infringement, appropriation of name and likeness, and unlawful, unfair, and deceptive business practices;

10. For punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

ERIKSON LAW GROUP
200 NORTH LARCHMONT BOULEVARD
LOS ANGELES, CALIFORNIA 90004
Tel 323.465.3100 □ Fax 323.465.3177

11. Such other damages and further relief, as the Court may deem appropriate.

DATED: 8/5/15     ERIKSON LAW GROUP

By: _____/s/_____
David Alden Erikson
Attorneys for Plaintiff JOSEPH TIERNEY

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on their claims on all issues triable by a jury.

DATED: 8/5/15        ERIKSON LAW GROUP

By: /s/
David Alden Erikson
Attorneys for Plaintiff JOSEPH TIERNEY