1  Tyson K. Hottinger (Bar No. 253221)
   *thottinger@mabr.com*
2  MASCHOFF BRENNAN, PLLC
   20 Pacifica, Suite 1130
3  Irvine, California 92618
   Telephone: (949) 202-1900
4  Facsimile:  (949) 453-1104
5
   Attorneys for Defendant,
6  Moschino, S.P.A.

7                    **UNITED STATES DISTRICT COURT**

8                   **CENTRAL DISTRICT OF CALIFORNIA**

9                          **WESTERN DIVISION**

10

11 JOSEPH TIERNEY, professionally known        Case No. 2:15-cv-05900-SVW (PJWx)
   as "Rime," an individual;
12                                              **DEFENDANT'S NOTICE OF
13                 Plaintiff,                   MOTION AND MOTION TO
                                                STRIKE COMPLAINT PURSUANT
14     v.                                       TO CAL. CIV. PROC. CODE §
                                                425.16; MEMORANDUM OF POINTS
15 MOSCHINO S.P.A., an Italian corporation;     AND AUTHORITIES IN SUPPORT
16 JEREMY SCOTT, an individual; and             OF DEFENDANT MOSCHINO'S
   DOES 1-10 inclusive.                         MOTION TO STRIKE COMPLAINT**
17
18                 Defendants.                  [MEMORANDUM OF POINTS AND
                                                AUTHORITIES, DECLARATION OF
19                                              TYSON K. HOTTINGER,
20                                              DECLARATION OF MASSIMO
                                                FERRETI, AND PROPOSED ORDER
21                                              FILED CONCURRENTLY HEREWITH]
22
23                                              HON. STEPHEN V. WILSON
24                                              UNITED STATES DISTRICT JUDGE
                                                SPRING STREET, COURTROOM 6
25
26                                              **Date:        December 7, 2015**
27                                              **Time:        1:30 p.m.**
                                                **Place:       Courtroom No. 6**
28

---

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 7, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Stephen V. Wilson in Courtroom 6 of the above-captioned court, located at 312 North Spring Street, Los Angeles, California 90012, Defendant Moschino S.P.A. will and hereby does move the Court for an order striking Plaintiff Joseph Tierney's Complaint pursuant to Cal. Civ. Proc. Code § 425.16 (California's Anti-SLAPP statute).

The motion will be based on this notice, the concurrently filed Memorandum of Points and Authorities and Declarations of Massimo Ferretti and Tyson K. Hottinger, all papers and records on file with the Court, and upon the arguments of counsel at the hearing.

Pursuant to Local Rule 7-3, this motion is made following the conference of counsel that took place telephonically on October 13, 2015.


Dated: October 30, 2015          Tyson K. Hottinger
                                 MASCHOFF BRENNAN LAYCOCK
                                 GILMORE ISRAELSEN & WRIGHT

                                 By: */s/ Tyson Hottinger*
                                     Tyson K. Hottinger
                                     Attorney for Defendant

.

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 2

III.  ARGUMENT ...................................................................................................... 4

    A.  This action arises from Moschino's exercise of its right of free speech in connection with an issue of public interest and, as such, is subject to the provisions of California's anti-SLAPP statute. ................................................. 4

        1.  This action arises from Moschino's exercise of its free speech rights. ... 4

        2.  Moschino's actions were in connection with an issue of public interest. ..................................................................................................... 7

    B.  Plaintiff cannot show a probability that he will prevail on the merits of his claims for negligence, violation of the right of publicity and unfair competition. ........................................................................................................ 8

        1.  Plaintiff's negligence claim is pre-empted by the Copyright Act. ......... 8

        2.  Plaintiff cannot show he has a probability of prevailing on his statutory and common law unfair competition claims. ......................... 12

        3.  Plaintiff cannot show he has a probability of prevailing on the merits of his Section 3344 claim. ................................................................ 20

    C.  Moschino is entitled to its attorneys' fees ................................................... 24

IV.  CONCLUSION ................................................................................................. 24

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

6

*Abdul-Jabbar v. Gen. Motors Corp.*,
   85 F.3d 407 (9th Cir. 1996) ......................................................... 23

7

8

*AF Holding, LLC v. Doe.*,
   2012 WL 4747170 (N.D. Cal. Oct. 3, 2012) ................................. 11

9

10

*Aligo v. Time-Life Books, Inc.*,
   C 94-20707 JW, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ...................................... 23

11

12

*Balboa Ins., Co. v. Trans Global Equities*
   218 Cal. App. 3d 1327 (1990) ....................................................... 10

13

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) ........................................ 12, 13, 15

14

15

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ...................................... 16, 17, 18

16

17

*Canady v. Bossier Parish School Bd.*,
   240 F.3d 437 (5th Cir. 2001) ........................................................... 5

18

19

*Church of Scientology v. Wollersheim*,
   42 Cal. App. 4th 623 (1996) ....................................................... 7, 8

20

21

*Cleary v. News Corp.*,
   30 F.3d 1255 (9th Cir. 1994) ....................................................... 12

22

23

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
   21 P.3d 797 (Cal. 2001) ............................................................... 21

24

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) ........................................................... 9

25

26

*Dielsi v. Falk*,
   916 F. Supp. 985 (C.D. Cal 1996) ............................................... 11

27

28

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 539 (1993) ........................................................... 7

ii

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ............................................................ 20

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) .......................................................... 13

*Equilon Enters., LLC v. Consumer Cause, Inc.*,
   29 Cal.4th 53 (2002) ........................................................................ 1

*Felix Cat Productions Inc. v. New Line Cinema*,
   2000 WL 770481 (C.D. Cal. Apr. 28, 2000) .................................... 11

*Gilbert v. Sykes*,
   147 Cal. App. 4th 12 (2007) .............................................................. 7

*Gladstone v. Hillel*,
   203 Cal. App. 3d 977 (1988) ........................................................... 10

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   501 F. Supp. 848 (S.D.N.Y. 1980), *aff'd*, 723 F.2d 195 (2d Cir. 1983), *rev'd
   on other grounds*, 471 U.S. 539 (1985) .......................................... 10

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (2009) ........................................................................... 4

*Mastrovincenzo v. City of New York*,
   435 F.3d 78 (2d Cir. 2006) ................................................................. 5

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir.2002) ............................................................ 12

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ..................................................... 23, 24

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ...................................................... 16, 17

*New W. Corp. v. NYM Co. of California, Inc.*,
   595 F.2d 1194 (9th Cir. 1979) ......................................................... 19

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*,
   190 F.3d 963 (9th Cir. 1999) ............................................................. 1

*No Doubt v. Activision Publishing, Inc.*,
   192 Cal. App. 4th 1018 (2011) .......................................................... 4

iii

*Nugard, Inc. v. Uusi-Kertfula*,
   159 Cal. App. 4th 1027 (2008) ........................................................ 7

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   213 F. Supp. 2d 1146 (C.D. Cal. 2002) ......................................... 20

*RDF Media Ltd. v. Fox Broad. Co.*,
   372 F. Supp. 2d 556 (C.D. Cal. 2005) ........................................... 12

*Castorina ex rel. Rewt v. Madison County School Bd.*,
   246 F.3d 536 (6th Cir. 2001) ......................................................... 5

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir.1989) ......................................... 2, 12, 13, 15

*Rosciszewsky v. Arete Associates, Inc.*,
   1 F.3d 225 (4th Cir. 1993) ............................................................. 9

*Ross v. Roberts*,
   166 Cal. Rptr. 3d 359 (Cal. App. 2d Dist. 2013) ...................... 21, 22

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ........................................................ 7

*Sullivan v. Oracle Corp.*,
   254 P.3d 237 (Cal. 2011) ............................................................. 21

*Tamkin v. CBS Broadcasting, Inc.*,
   194 Cal. App. 4th 133 (2011) ........................................................ 4

*Tinker v. Des Moines Independent Community School Dist.*,
   393 U.S. 503 (1969) ....................................................................... 5

*Volkswagenwerk Aktiengesellschaft v. Church*,
   411 F.2d 350 (9th Cir. 1969) ....................................................... 17

*Whalen v. United Food and Commercial Works Local 135*,
   2015 WL 4659213 (S.D. Cal. Aug. 5, 2015) ................................ 11

*White v. Samsung Elect. Am., Inc.*,
   971 F.2d 1395 (9th Cir. 1992) ................................................. 23, 24

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) .................................................................. 4

iv

1

*Worth v. Universal Pictures, Inc.*,
   5 F. Supp. 2d 816 (C. D. Cal.) ........................................................................ 11

2

*Yeager v. Cingular Wireless LLC*,
   673 F. Supp. 2d 1089 (E.D. Cal. 2009) ........................................................ 23

3

4

**Statutes**

5

15 U.S.C. § 1125(a) .............................................................................*passim*

6

17 U.S.C. § 301 ...................................................................................*passim*

7

Cal. Civ. Proc. Code § 425.16 ...........................................................*passim*

8

Cal. Civ. Proc. Code § 3344 ...............................................................*passim*

9

Cal. Civ. Proc. Code § 17200 ................................................................... 12

10

11

**Other Authorities**

12

House Report No. 94-1476 (1976), reprinted in 1976 U.S.C.C.A.N. 5659 .......................... 9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

## I.    INTRODUCTION

3        California Code of Civil Procedure section 425.16, commonly referred to as the

4 "anti-SLAPP statute," authorizes courts to dismiss lawsuits that threaten to chill the valid

5 exercise of constitutional rights.  Cal. Civ. Proc. Code § 425.16.  The anti-SLAPP statute

6 applies with equal vigor in federal court as to any and all state and common law claims. *See*

7 *U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir.

8 1999) (upholding the application of the anti-SLAPP statute in federal court since, *inter alia*,

9 "the twin purposes of the *Erie* rule—"discouragement of forum-shopping and avoidance of

10 inequitable administration of the law"—favor application of California's Anti–SLAPP

11 statute in federal cases.). Plaintiff's claims for unfair competition, violation of Cal. Civil

12 Code § 3344 and negligence are subject to the anti-SLAPP statute and, because he cannot

13 demonstrate that he has a probability of prevailing on those claims on the merits, they

14 should properly be stricken under Cal. Civ. Proc. Code § 425.16.

15        To succeed on an anti-SLAPP motion, the defendant must first show that a cause of

16 action arises from the exercise of the defendant's constitutional right of petition or free

17 speech in connection with a public issue.  If the defendant meets this burden, the court must

18 dismiss the case unless the plaintiff establishes a probability of prevailing on the merits of

19 the claim.  Cal. Civ. Proc. Code § 425.16(b)(1).  The defendant need not prove that the

20 plaintiff intended to chill the defendant's exercise of constitutional rights.  *Equilon Enters.,*

21 *LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 58 (2002). Moreover, the anti-SLAPP statute

22 must be "construed broadly" in order to "encourage continued participation in matters of

23 public significance."  Cal. Civ. Proc. Code § 425.16(a).

24        This lawsuit—grounded in claims of liability stemming from artistic activities—is

25 precisely the type of litigation the California legislature has sought to eradicate.  Some of

26 Plaintiff Joseph Tierney's (herein after "Mr. Tierney" or "Plaintiff") causes of action

27 against Defendant Moschino (hereafter "Moschino") arise from the lawful exercise of

28 Moschino's free speech rights under the United States Constitution. Specifically, as a

1

1  prominent leading fashion brand, Moschino is engaging in expressive artistic activity

2  through boundary pushing fashion design which comments on larger social and cultural

3  issues.  Moschino's designs in this case—as evidenced by the allegations of Plaintiff's

4  Complaint—are the subject of public interest.

5       Thus, under Cal. Civ. Proc. Code § 425.16(b)(1), Plaintiff's claims must be

6  dismissed unless he can establish a probability of prevailing on the merits.  He cannot.

7  Specifically, Plaintiff's negligence claim is dead on arrival because it is squarely pre-

8  empted by federal law (namely, the Copyright Act).   Plaintiff's right of publicity claim,

9  brought under Cal. Civil Code § 3344, fails since it is precluded by the transformative use

10  defense, it reflects incidental use, and Plaintiff would be unable to prove the knowledge

11  requirement.  Finally, Plaintiff cannot show that he has a likelihood of prevailing on his

12  claim for unfair competition, as it is co-terminus with his Lanham Act claim, which fails

13  since it is precluded by the *Rogers* defense, protected by fair use, and because the basic

14  elements of this claim are not met.

15       All told, Plaintiff's claims for negligence, unfair competition and violation of the

16  right of publicity ("claims") should be dismissed, and Moschino should be awarded its

17  attorneys' fees.

18  **II.    STATEMENT OF FACTS**

19       As alleged in the Complaint, Moschino is "a high-end apparel brand based in Italy,

20  and among fashion's most prominent names" and Jeremy Scott is Moschino's "creative

21  director." (collectively, "Defendants").  (Dkt. No. 1 at ¶ 11, 12); (Declaration of Defendant

22  Jeremy Scott filed in support of co-defendant Mr. Scotts' Motion to Strike [Dkt. No. 13-2]

23  at ¶ 7.  In his role as Creative Director of Moschino, S.p.A, Jeremy Scott came up with

24  "[t]he idea of putting graffiti—or "street" art—on ultra-expensive clothing," as a social

25  commentary "on the way in which society objectifies women."  (Dkt. No. 1 at ¶ 3); (Scott

26  Decl. ¶ 7).  To that end, Moschino created a line of clothing that incorporated graffiti

27  motifs and tags into its designs, and "used the medium of graffiti, and the way in which

28

2

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

1    street artists impose cultural symbols and meaning upon the vernacular landscape, to create
2    a metaphor of a sophisticated woman literally tagged with graffiti." (Scott Decl. ¶ 7).
3           One such item, a dress and jacket that incorporated a graffiti print was worn by Katy
4    Perry and Jeremy Scott respectively at the Metropolitan Museum of Art's "Met Gala" in
5    New York. (Dkt. No. 1 at ¶ 1). Having the graffiti print dress worn by Katy Perry at the
6    Met Gala also supported this artistic concept, with what Mr. Tierney misunderstands as
7    "calculated" and "deliberate[] and obnoxious[] disobe[dience of] a recommended dress
8    code," being in fact an artistic statement that "subverted the seriousness of traditional
9    black-tie fashion." (Scott Decl. ¶ 7); (Dkt. No. 1 at ¶ 4).
10          Other Moschino clothing with a similar graffiti based design and message were
11   shown at the Milan Fashion Week, in Milan, Italy. (Dkt. No. 1 at ¶¶ 2, 20). Moschino's
12   graffiti-designed clothing incorporated dozens of different graffiti tags into the designs, and
13   on two particular items shown in Milan one of the graffiti tags happened to be the word
14   RIME. (Dkt. No. 1 at ¶ 2); (Hottinger Decl. ¶ 4, 5). The word RIME appeared on
15   inconspicuous locations on the two fashion items, such as on the far left shoulder of a dress
16   covered in graffiti (almost invisible in the standard front-on view) and on the side of a
17   suitcase. (Hottinger Decl. ¶ 4, 5). Neither of these two fashion items, or any Moschino
18   item containing the word RIME were ever sold in the United States, or featured at any
19   fashion show or other public event within the United States. (Massimo Decl. ¶ 3-
20   6). Instead, these designs were intended to be a distillation of Moschino's artistic vision
21   and an expression of design ethos, to be shown at the Milan Fashion Week.
22          Mr. Tierney filed a complaint against Moschino and Jeremy Scott that sought to
23   prevent Moschino from using the word RIME, allegedly one of the names associated with
24   his graffiti-style artwork, in clothing designs that use graffiti-style motifs in furtherance of
25   social and cultural commentary. (Dkt. No. 1 at ¶ 44). Mr. Tierney also alleged that the
26   Met Gala dress and jacket included a graffiti work that "cover[ed] the broad side of a
27   building in Detroit." (Dkt. No. 1 at ¶ 15). Mr. Tierney's complaint included several state
28   law claims, including statutory and common law unfair competition, violation of California

3

1  Civil Code § 3344, and negligence.  (Dkt. No. 1 at ¶ 34-77).  These claims seek to restrict

2  Moschino's exercise of First Amendment rights of free speech in connection with an issue

3  of public interest, by barring and punishing the creation of artistic fashion with a significant

4  social and cultural message.

5  **III.  ARGUMENT**

6  **A.  This action arises from Moschino's exercise of its right of free speech in**

7  **connection with an issue of public interest and, as such, is subject to the**

8  **provisions of California's anti-SLAPP statute.**

9  To implicate the anti-SLAPP statute and require Plaintiff to prove that he possesses a

10  probability of prevailing on the merits for his state-law claims, Moschino must first show

11  that this action arises from the exercise of its free-speech rights in connection with a matter

12  of public interest.  Cal. Civ. Proc. Code § 425.16(b)(1).  It undoubtedly does.

13  **1.  This action arises from Moschino's exercise of its free speech rights.**

14  While "the California Supreme Court has not drawn the outer limits of activity that

15  furthers the exercise of free speech rights . . . the courts of California have interpreted this

16  piece of the defendant's threshold showing rather loosely."  *Hilton v. Hallmark Cards*, 599

17  F.3d 894, 903-04 (2009).  The creation and use of creative works constitutes conduct that

18  arises from protected activities under the anti-SLAPP statute.  As the California Supreme

19  Court has held, "creative product[s]" lie at the heart of what "the First Amendment

20  protects." *Winter v. DC Comics*, 30 Cal.4th 881, 887, 891-92 (2003) (creating comic books

21  is protected First Amendment activity).  Indeed, the creation and dissemination of

22  televisions shows and comic books have been held to constitute exercise of expressive

23  rights in the public interest subject to the anti-SLAPP statute.  *See Tamkin v. CBS*

24  *Broadcasting, Inc.*, 194 Cal. App. 4th 133, 142 (2011) (holding that "the creation of a

25  television show is an exercise of first speech" subject to the anti-SLAPP statute" as the

26  "defendants' acts helped to advance or assist in the creation, casting, and broadcasting of an

27  episode of a popular television show); *No Doubt v. Activision Publishing, Inc.*, 192 Cal.

28  App. 4th 1018, 1027 (2011) (holding that videogames are "considered 'expressive works'

4

subject to First Amendment protection and that "Activision's use of No Doubt's likeness in *Band Hero* is a matter of public interest because of the widespread fame No Doubt has achieved"). Like television shows and comic books, high-end fashion creations are considered "expressive works" protected under First Amendment and their design and dissemination constitutes activity subject to the anti-SLAPP statute.

It is well-established that the wearing of fashion (let alone its design and dissemination) is a form protected First Amendment activity as a form of expressive conduct. *See, e.g.*, *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505 (1969) ("the wearing of an armband for the purpose of expressing certain views is the type of symbolic act that is within the Free Speech Clause of the First Amendment."); *Canady v. Bossier Parish School Bd.*, 240 F.3d 437 (5th Cir. 2001) ("[w]hile a person's choice of clothing may be predicated solely on considerations of style and comfort, an individual's choice of attire also may be endowed with sufficient levels of intentional expression to elicit First Amendment shelter"); *Castorina ex rel. Rewt v. Madison County School Bd.*, 246 F.3d 536, 540 (6th Cir. 2001) (two students' "decision to wear Hank Williams T-shirts constitutes speech falling within the First Amendment"). Indeed, as the Second Circuit has held, the making and selling of graffiti-laced clothing items serves "a predominantly expressive purpose, and their sale is consequently protected under the First Amendment." *Mastrovincenzo v. City of New York,* 435 F.3d 78, 97 (2d Cir. 2006).

The claims of the present action are based on Moschino's alleged design and creation of certain articles of clothing and accessories within Moschino's 2015 Fall/Winter collection. (Dkt. No. 1 at ¶17.) Specifically at issue are a limited number of pieces within the collection that are alleged to (1) include "literal copies" of a mural painted by Plaintiff and (2) contain "a forgery of Plaintiff's signature and Plaintiff's name 'Rime.'" (*Id.*)

Jeremy Scott is Moschino's Creative Director (Dkt. No. 13-2 at ¶7) , as such he, and others at Moschino, direct Moschino's image and style, and set the artistic and creative direction that underlies Moschino's creative direction, setting trends for the entire fashion world. Moschino's designs represent the fulfilment and culmination of the creative vision

5

of many individuals (including co-defendant, Jeremy Scott's), and the continuation of the innovative artistic culture instituted by Franco Moschino.  Mr. Scott has devoted both his personal and professional life to expressive artistic activity through his sartorial creations.  (Dkt. No. 13-2 at ¶¶1 & 10).  Moschino is not a mass manufacturer of plain white t-shirts, but is a moving force in the fashion world—which is why, Moschino does not have a creative director to just "propos[e] new skirt lengths and dress hems for each season," but rather has Jeremy Scott to ensure that Moschino's designs are "a vehicle to communicate and connect with the world."  (*Id.*)

As one example of Moschino's Scott-designed garments, Scott's rendition of an evening gown (shown below) for the opera-attending beau monde features a print replete with nutritional content information and graphics as if the gown were a giant bag of junk food.  (*Id.* at ¶5).  This tongue-in-cheek riff on Brahmin formal wear is not merely clothing; it highlights the disposable nature of fashion and speaks to the potentially dichotomous nature of inner and outer beauty and the waist/waste and excess of consumer culture. (*Id.*)



As with the evening gown shown above, the articles of clothing and accessories that give rise to this action constitute an exercise of Moschino's free speech and therefore meet this threshold.

6

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

### 2.    Moschino's actions were in connection with an issue of public interest.

Under California Code of Civil Procedure Section 425.16(e)(3), a "public issue" for the purposes of the anti-SLAPP statute includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . ." Cal. Civ. Proc. Code § 425.16(e)(3). A statement in a public forum is connected to an issue of public interest "if the subject of the activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest." *See D.C.,* 182 Cal. App. 4th at 1226 (citing *Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 813 (2003)). The subject of the activity is fashion at the annual Metropolitan Gala, which Plaintiff has described as "a high-profile party thrown annually by one of the nation's most venerable institutions . . ." (Dkt. No. 1 at ¶3) and at the Milan Fashion week. Therefore, for the purposes of California's anti-SLAPP statute, the issue in connection with Moschino's free speech in this lawsuit is very much a public one.

Courts must construe the 'public issue/public interest' requirement of the anti-SLAPP statute broadly. *See Gilbert v. Sykes*, 147 Cal. App. 4th 12, 23 (2007) (citation omitted). And, as courts have held, conduct is made "in connection with a public issue or an issue of public interest," as required by Cal. Civ. Proc. Code § 425.16(e)(4), "if the conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic." *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677 (2010). Indeed, as one court has succinctly put it, an issue of public interest is "***any issue in which the public is interested***." *Nugard, Inc. v. Uusi-Kertula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).

Public interest undisputedly attaches to "popular culture," *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 539, 542-43 (1993), and events that received substantial "media coverage," *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 623, 651 (1996). In the Complaint, Plaintiff himself makes allegations that, if accepted as true, establish that

7

Moschino's actions were in connection with an issue of public interest. For example, Plaintiff alleges that Moschino and Jeremy Scott are "household names in high fashion." (Dkt. No. 1 at ¶1.) The alleged use of Mr. Tierney's work was referred to as Moschino and Scott's "highest-profile apparel," (*Id.*) The alleged actions occurred at the Met Gala, which Plaintiff characterizes as a "high-profile party thrown annually by one of the nation's most venerable institutions, the Metropolitan Museum of Art in New York City." (*Id.* at ¶3). Moschino's debut of the line, including the alleged "Vandal Eyes" dress and the products including the word "RIME" at the Milan Fashion Week, "garnered international attention." (*Id.* at ¶ 20.) And Ms. Perry, as a major celebrity with a strong public following, is alleged to have generated tremendous publicity as she was "widely photographed in the clothing," (*Id.* at ¶3), and garnering "immense international publicity including the New York Times, CNN, Vogue, Vanity Fair, People, US Weekly, and . . . on social media," (*Id.* at ¶20). Thus, Plaintiff alleges that Moschino's activities at issue in this suit arise from a matter of public interest.

> **B.** **Plaintiff cannot show a probability that he will prevail on the merits of his claims for negligence, violation of the right of publicity and unfair competition.**

Because this action arises out of Moschino's exercise of its free-speech rights on a public issue, the case must be dismissed unless Plaintiff can prove that he will probably prevail on his claims. Cal. Civ. Proc. Code § 425.16(b)(1). He cannot.

> **1.** **Plaintiff's negligence claim is pre-empted by the Copyright Act.**

Under federal law, any state or common law claim equivalent to a cause of action for copyright infringement is preempted and properly dismissed. As the Copyright Act explicitly provides, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by this title," and, as such, "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). Through 17 U.S.C. § 301, federal law explicitly provides for preemption of state law claims that clash with the

8

strictures of copyright protection.  Specifically, "Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to ***any*** of the exclusive rights within the scope of federal law . . . should be litigated ***only*** as federal copyright claims." *Rosciszewsky v. Arete Associates, Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) (emphasis added).  Plaintiff's claim for negligence nothing more than disguised copyright claims seeking to vindicate the "exclusive rights within the general scope of copyright law."   They are therefore preempted by federal law and properly dismissed.  The case law is unequivocal in holding that negligence claims related to the unauthorized exploitation of purported copyrighted materials is preempted.

Under 17 U.S.C. § 301, all "rights under the common law or the statutes of a State that are equivalent to a copyright" are "preempt[ed] and abolishe[d]." Notes of Committee on the Judiciary, House Report No. 94-1476, at 13031 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5746-47.  The congressional intent behind § 301 was clear: "the declaration of this principle in Section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection." (*Id.*)(emphasis added). Accordingly, courts have imposed a strict test to ensure that state-created rights which mimic copyright claims do not survive preemption challenge. First, as a threshold matter, the stated cause of action must pertain to "works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright." 17 U.S.C. § 301(a); *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987). Second, the state-law cause of action must be a "legal or equitable right[] that [is] equivalent to any of the exclusive right within the general scope of copyright." (*Id.*)  To survive this second prong of the preemption test, the state-law cause of action must protect rights that are "qualitatively different" from those secured under copyright.  (*Id.* at 977). The state claim must therefore possess an "extra element" which changes the nature of the action.  (*Id.*)  Plaintiff's negligence claim involves subject matter falling squarely within

9

1   the ambit of federal copyright law and fails the "extra element" test.  It is therefore

2   preempted.

   **a.   By Plaintiff's own allegations, the subject matter of Plaintiff's**

3   **claim derives from a work that purportedly enjoys copyright**

4   **protection.**

5

6   The subject matter of Plaintiff's negligence claim derives from his putative work of

7   graffiti entitled "Vandal Eyes," to which he claims copyright protection. (Dkt. No. 1 at

8   ¶29.)  Thus, by virtue of Plaintiff's own representations, the first element of the § 301

9   preemption test is met.

   **b.   Plaintiff's negligence claim fails the extra element test of 17**

10   **U.S.C. § 301.**

11

12   Plaintiff's negligence claim is the equivalent to a cause of action for copyright

13   infringement and is therefore preempted. Under § 301, a right that is "equivalent" to

14   copyright is one that is infringed by the act of "reproducing, performing, distributing, or

15   display" a copyrighted work. *Balboa Ins., Co. v. Trans Global Equities* 218 Cal. App. 3d

16   1327, 1339 (1990) (citing 1-1 Nimmer on Copyright, §1.01(b)); *Harper & Row,*

17   *Publishers, Inc. v. Nation Enters.*, 501 F. Supp. 848 (S.D.N.Y. 1980), *aff'd*, 723 F.2d 195

18   (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) (dismissing claims for

19   conversion and tortious interference with contract stemming from the unauthorized

20   exploitation of plaintiff's copyrighted work on § 301 preemption grounds). Thus, to survive

21   preemption, Plaintiff must demonstrate that his cause of action contains an "extra element"

22   beyond unauthorized duplication, performance, distribution or display that renders the

23   cause of action "qualitatively different from a copyright infringement claim." *Gladstone v.*

24   *Hillel*, 203 Cal. App. 3d 977, 987 (1988) (emphasis in original).  However, Plaintiff's

25   negligence claim is nothing more than rehashed infringement claims, seeking to vindicate

26   Mr. Tierney's purported exclusive rights in the work over which he claims copyright

27   ownership. Specifically, the negligence claim is triggered by a purported infringement of

28   Mr. Tierney's "Vandal Eyes."

1    Indeed, the law pertaining to the pre-emption of negligence claims under the

2    Copyright Act could not be clearer.  As this court once observed, "Because the essential

3    allegation [in a negligence claim brought with a copyright claim] is that Defendants

4    unlawfully copied Plaintiff's ideas, it is still a copyright infringement claim. Indeed,

5    recharacterization of the claim as one of 'negligence' does not add a legally cognizable

6    additional element because a general claim for copyright infringement is fundamentally one

7    founded on strict liability. . .  The alteration of the required mental state does not add an

8    'additional element'… Plaintiff's negligence claim is preempted by federal copyright law."

9    *Dielsi v. Falk*, 916 F. Supp. 985, 992-993 (C.D. Cal 1996) (citations omitted).

10    As a result, courts have systemically held that negligence claims are clearly pre-

11    empted under the Copyright Act.  *See* (*Id.* at 992-993) (negligence claim pre-empted by the

12    Copyright Act); *Felix Cat Productions Inc. v. New Line Cinema*, 2000 WL 770481, *5

13    (C.D. Cal. Apr. 28, 2000) (holding that "recharacterizing plaintiff's copyright claim as one

14    for negligence does not add an additional element. . . . Plaintiff's negligence claim, based

15    on the alleged infringement of plaintiff's copyright, is preempted by federal law."); *AF

16    Holding, LLC v. Doe*., 2012 WL 4747170 (N.D. Cal. Oct. 3, 2012) (holding, as pre-empted

17    under the Copyright Act, plaintiff's negligence claim for defendant's actions (or inactions)

18    playing a role in the unauthorized use of a copyrighted video); *Whalen v. United Food and

19    Commercial Works Local 135*, 2015 WL 4659213 (S.D. Cal. Aug. 5, 2015) (dismissing

20    claims for negligence, conversion and California Art Preservation Act as preempted under

21    the Copyright Act). *See also Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816 (C. D.

22    Cal.) (holding that screenwriters claims for regarding breach of contract, intentional

23    interference with prospective economic advantage and conversion for unauthorized use of

24    screenplay were preempted by the Copyright Act).

25    The matter, quite simply, is open and shut.  Mr. Tierney's claim for negligence is

26    preempted by § 301. The Court should therefore strike these claims as duplicative actions

27    needlessly multiplying these proceedings.

28

11

2.     **Plaintiff cannot show he has a probability of prevailing on his statutory and common law unfair competition claims.**

"[The Ninth] Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are "substantially congruent" to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).  Thus, "Plaintiff's state law claims for unfair competition must fail [if] they are based on Plaintiff's defective Lanham Act claims." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 565 (C.D. Cal. 2005). Here, Mr. Tierney's claim for unfair competition, both statutory and common law, are based on the alleged violations of the Lanham Act.  (Dkt. No. 1 at ¶ 59).  Thus, if Mr. Tierney cannot prevail on his Lanham Act claims, his statutory and common law unfair competition claims will fail as well.

a.     **Plaintiff's Lanham Act claims are precluded by the First Amendment**

Lanham act claims are "limited by the First Amendment" via the *Rogers* defense. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013); *See also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir.2002) (adopting the *Rogers* test in the Ninth Circuit).  "Under the *Rogers* test, § 43(a) will not be applied to expressive works 'unless the [use of the trademark or other identifying material] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use of the trademark or other identifying material] explicitly misleads as to the source or the content of the work.'"  *Brown,* 724 F.3d at 1239 (citing *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir.1989)).  In other words, use of a trademark in an expressive work is only infringing if (1) the use of the mark has no artistic relevance to the underlying work whatsoever, or (2) it has some artistic relevance, but explicitly misleads as to the source or the content of the work.

Mr. Tierney's claims for a Lanham Act violation allege only the use of the word RIME in designs which incorporate that word into an overall design involving dozens of

12

graffiti tags to create an urban feel, in the furtherance of Moschino's artistic goals.  Mr. Tierney cannot show that use of the word "RIME" had no artistic relevance to the underlying work.  In fact, Mr. Tierney has acknowledged in the Complaint that use of the word "RIME" was artistically relevant.  As alleged in Mr. Tierney's complaint, Moschino's underlying work sought to "put[] graffiti—or 'street' art—on ultra-expensive clothing." (Dkt. No. 1 at ¶ 3.)  Thus, putting graffiti tags, like Mr. Tierney's alleged RIME mark is "[p]ossibly the only way, and certainly a reasonable way," of achieving a graffiti, "street" art, aesthetic.  *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1100 (9th Cir. 2008).  Given his allegations in the Complaint, Mr. Tierney cannot successfully argue that the use of RIME, a graffiti tag, has no relevance at all, to the design of clothing with a graffiti theme.

Mr. Tierney also cannot show that he has a probability of successfully arguing that Moschino explicitly mislead anyone as to the source or content of the work.  (*Id.*)  The "likelihood of confusion" test is irrelevant for the purposes of applying the *Rogers* defense, as it "'fail[s] to account for the full weight of the public's interest in free expression' when expressive works are involved."  *Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1242 (9th Cir. 2013).[1]  Instead, the "key [to the *Rogers* test is] that the creator must *explicitly* mislead consumers."  (*Id.* at 1245.)

Mr. Tierney will be unable to prove that the products containing the word "RIME"

---

[1] In *Brown*, the plaintiff put forth four different arguments, all of which failed to even get pass the motion to dismiss stage.  Brown offered a consumer survey indicating actual consumer confusion, highlighted specific statements by the defendant stating the work included the plaintiff, pointed out that defendant made several small changes to his likeness, and pointed to specific statements the defendant made claiming they had "obtained written authorization" from the plaintiff. (*Id.* at 1245-47).  The Ninth Circuit still upheld the dismissal, finding none of these pleaded facts to sufficiently show the creator *explicitly* mislead consumers.  The Ninth Circuit noted that even a survey demonstrating consumers actually "believed that [plaintiff] endorsed [the product] . . . would not support the claim that the use was explicitly misleading to consumers." (*Id.* at 1246).  The Ninth Circuit was also unpersuaded by the facts that defendant had written materials stating plaintiff was included in the product, and actual statements from the defendant stating they had "written authorization" from the plaintiff, noting neither of these facts explicitly mislead consumers about endorsement. (*Id.* at 1246-57).  Finally, the Ninth Circuit noted that the defendants making small modifications to the plaintiff's likeness "could only make consumers *less* likely to believe that [plaintiff] endorsed" defendant's product. (*Id.*)

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

are explicitly misleading as to the source of the products.  With regard to these products, the word "RIME" is used along with a host of other words. There is no reasonable basis (as a matter of law) to conclude that anyone would think that the word RIME was being used a trademark or to suggest sponsorship or endorsement of any kind.  Indeed, Mr. Tierney's only allegations of the word RIME being used on any of Moschino's products is based on the two products shown below, which depict the word RIME included amongst an overall, graffiti-riddled design surrounded by a plethora of other "graffiti" tags. (Dkt. No. 1 at ¶ 2.) The products at issue (as shown in the Complaint) are illustrated below.

 

 The pictures below are of the same products illustrated above, but better illustrate the volume of graffiti on the products.  (Hottinger Decl. ¶ 4–5).

14

 

Based on common sense alone, Mr. Tierney cannot successfully argue that consumers, seeing one bag or dress in an entire collection, covered with a many graffiti tags, would think that product was endorsed by just one name amongst the many displayed. (Dkt. No. 1 at ¶ 2.)

The goals of both California's Anti-SLAPP motions and the *Rogers* defense are the same—protection of constitutional rights when "First Amendment rights are at their height." (*Id.* at 1245). Since the *Rogers* defense is "an inflexible and mechanical rule that more or less automatically protects expressive works regardless of the deception involved," Mr. Tierney cannot prevail in a suit that directly targets protected artistic speech.

> **b.** **Mr. Tierney cannot prevail, because Moschino's alleged use is protected by nominative fair use.**

Plaintiff also does not have a probable chance of prevailing against Moschino's nominative fair use doctrine. "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, *even if the*

15

1    *defendant's ultimate goal is to describe his own product*." *Cairns v. Franklin Mint Co.*,

2    292 F.3d 1139, 1151 (9th Cir. 2002)(emphasis in original).

3         A defendant's use falls under nominative fair use if "the [plaintiff's] product or

4    service in question [is] one not readily identifiable without use of the trademark; second,

5    only so much of the mark or marks [is] used as is reasonably necessary to identify the

6    [plaintiff's] product or service; and third, the user [did] nothing that would, in conjunction

7    with the mark, suggest sponsorship or endorsement by the trademark holder." (*Id.*)

8         Here, Plaintiff would be unable to prove that Moschino has made use of his alleged

9    mark beyond nominative fair use.  In fact, he repeatedly alleges that Moschino's use of

10   RIME is specifically done to refer to him in his street artist capacity.  (Dkt. No. 1 at ¶ 24.)

11   Thus, any alleged use of the word RIME by Moschino would only be to specifically refer

12   to Mr. Tierney as an allegedly street artist known for his graffiti (and not as a mark to

13   designate source or origin).  (*Id.* at ¶ 23.)

14        First, the plaintiff's product or service must be one that is not readily identifiable

15   without use of the trademark.  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir.

16   2002).  In *Cairns*, the court found that "Princess Diana's person is not readily identifiable

17   without use of her name," even though one could refer to "the English princess who died in

18   a car crash."  (*Id.* at 143).  Likewise, in *New Kids*, the Ninth Circuit noted that although

19   "one might refer to 'the two-time world champions' or 'the professional basketball team

20   from Chicago,' but it's far simpler (and more likely to be understood) to refer to the

21   Chicago Bulls."  *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th

22   Cir. 1992).

23        Similarly, here, a reference, as alleged in the Complaint, to Mr. Tierney as a street

24   artist is not readily identifiable without use of the term RIME.  As alleged by Mr. Tierney

25   himself, his "respective artistic product" is his "artwork," and "street cred."  (Dkt. No. 1 at

26   ¶¶ 23, 44-45.)  Mr. Tierney does not allege that his artwork would be readily identifiable

27   without using the word RIME and indeed explicitly declined to assert trademark

28   infringement for his artwork itself, claiming only that "Plaintiff's own pseudonymous name

16

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

1    and signature, [is] recognized by the public as associated with Plaintiff." (*Id.* at ¶ 24.)

2    Even if his "street cred" were recognizable by itself, as in *Cairns* and *New Kids*, it's far

3    simpler to refer directly to RIME.  Indeed, Mr. Tierney has no probability of successfully

4    arguing that he would be readily identifiable without the use of RIME because his entire

5    §3344 claim relies on him arguing that he *is identifiable* by the term RIME.  If celebrities

6    as well known as the Chicago Bulls and Princess Diana are not readily identifiable without

7    use of the trademark, neither does Mr. Tierney.

8            Second, like other defendants successfully drawing on the nominative fair use

9    doctrine, according to the allegations of the Complaint, Moschino only makes so much use

10   of the plaintiff's mark "as is reasonably necessary to identify the [Plaintiff's] product or

11   service."  *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1153 (9th Cir. 2002).  In *Cairns*, the

12   Ninth Circuit noted that repeated use of the name "Diana" was "reasonably necessary" to

13   identify Princess Diana, and that "there is no allegation that [defendant] used any

14   'distinctive lettering' . . . intimately associated with [plaintiff]." (*Id.* at 1154).  In

15   *Volkswagenwerk*, the Ninth Circuit noted that defendants "did not use Volkswagen's

16   distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem."

17   *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969).

18           Here, like in *Cairns*, Mr. Tierney has not alleged that Moschino has used any

19   "distinctive lettering" associated with Mr. Tierney's use of RIME and Moschino made no

20   use of any distinctive lettering in Mr. Tierney's purported mark.  In fact, Mr. Tierney

21   repeatedly alleges that the styling used on the products at issue is different, calling it a

22   "fake signature." (Dkt. No. 1 at ¶ 2.)   Indeed, as shown in Mr. Tierney's pleadings,

23   Moschino's use of the word RIME was limited in scope and only appeared grouped

24   together with other graffiti tags—just enough as is reasonably necessary to, as alleged

25   Plaintiff, reference Mr. Tierney as one of many popular graffiti artists.  Furthermore, given

26   the infrequency and inconspicuous nature in which Moschino used the word RIME, the

27   only way Mr. Tierney could successfully argue this is by saying *no use* is allowed—an

28   argument that would fly in the face of "fair use" itself.

17

Finally, to qualify for a nominative fair use defense, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1151 (9th Cir. 2002). In *Cairns*, the Ninth Circuit noted how none of plaintiff's advertisements "claim that these products are sponsored or endorsed by the [Plaintiff]." Similarly, here, Mr. Tierney has not and cannot allege that Moschino has ever claimed sponsorship or endorsement by Mr. Tierney in their advertisements. Mr. Tierney claims only that the word RIME appears as part of the design on clothing and that the clothing that incidentally included his name was advertised. (Dkt. No. 1 at ¶ 2.) In addition, Mr. Tierney extensively alleges that Moschino "prominent[ly]" "embellish[es]" the allegedly infringing items by "includ[ing] the brand name Moschino," which also shows that Moschino had explicitly disclaimed any sponsorship or endorsement by Mr. Tierney. (*Id.* at ¶ 19.) If, as in *Cairns*, products prominently displaying Diana's name and likeness were insufficient to even pass the motion to dismiss stage, Mr. Tierney would be unable to prove that Moschino did anything to suggest endorsement by him.

### c.   Mr. Tierney cannot show any probability of prevailing on the basic elements of a Lanham Act claim.

A claim under 15 U.S.C. § 1125(a) requires: (1) the existence of a valid, protectable mark used in connection with the sale of goods or services; and (2) [defendant's] use of a mark that is confusingly similar." (*Id.*) (citing *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir.1999)).

First, Plaintiff alleges that his "professional name," RIME, is "recognize[ed] and has "secondary meaning, as that term is understood in trademark law." (Dkt. No. 1 at ¶ 43.) However, in practice, Mr. Tierney would have no possibility of successfully arguing this. A different company, BB Star, Inc., has federally registered the trademark RIME in connection with retail store services featuring men's and women's clothing, not Joseph Tierney. (Hottinger Decl. ¶ 2). Similarly, an individual, Thanh Q. Vu, has federally registered the trademark RIME PAYS in connection with men's, women's, and children's

18

MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16

1    clothing.  (Hottinger Decl. ¶ 3).[2]  Thus, Mr. Tierney will not be able to demonstrate he has

2    recognizable trademark rights to "Rime" at all, since those rights are validly owned by

3    others.

4         Furthermore, there must be use in interstate commerce by a defendant.  *New W.*

5    *Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1199 (9th Cir. 1979).  The word

6    "RIME" or any resemblance of the alleged fake signature of the artist known as "RIME"

7    does not appear on any product Moschino has ever sold in United States, or featured in a

8    fashion show or public event in the United States.  (See Declaration of Massimo Ferretti

9    ("Ferretti Declaration") at ¶¶ 3–6, filed concurrently herewith.)  Indeed, the only "proof"

10   that Plaintiff has of this alleged conduct are two blurry pictures that Plaintiff claims are

11   from Moschino's advertisements and media photographs.  (Dkt. No. 1 at ¶ 2).  But these

12   images do not constitute direct evidence of goods or products actually sold in the United

13   States or even used at a fashion show or public event.  As Plaintiff's own images in his

14   Complaint show (*Id.* at ¶ 1), the clothing featured and worn at public events in the United

15   States, do not show these alleged signatures.

16        Finally, Mr. Tierney will be unable to prove that there is any likelihood of confusion.

17   Here, the word RIME is used on the graphic design on products along with a host of other

18   words.  As provided above, there is no reasonable basis (as a matter of law) to conclude that

19   anyone would think that the word RIME was being used as a trademark or to suggest

20   sponsorship or endorsement of any kind.

21        In addition to being implausible, the facts alleged by Mr. Tierney are internally

22   inconsistent.  First, Mr. Tierney states that it was Moschino's idea to "put[] graffiti—or

23   'street' art—on ultra-expensive clothing" (Dkt. No. 1 at ¶ 3) so that they could be

24   transgressive (*Id.* at ¶ 4) in an attempt to create an urban feel.  Therefore Mr. Tierney's

25   pleadings allege that Moschino was not trying to create a statement of endorsement.  Mr.

26   Tierney also alleges that his audience recognizes that he "generally eschews connections to

27

28   _____
     [2] Interestingly, Mr. Tierney filed his own trademark application on the RIME mark on July 28 of
     this year.  His application is currently pending.

                                              19

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**

commercial consumerism," and would not "associate[e] with European chic, luxury and glamour," making it implausible consumers would be confused and think that Mr. Tierney was responsible for a line of high-end clothing.  (Dkt. No. 1 at ¶¶ 12, 23.)  Thus, Mr. Tierney's own pleaded facts go against his claims of perceived endorsement.

### 3. Plaintiff cannot show he has a probability of prevailing on the merits of his Section 3344 claim.

#### a. Mr. Tierney has failed to plead that Moschino possessed the *mens rea* necessary for a viable claim under § 3344.

To establish a claim under § 3344, a plaintiff must, among other things, demonstrate "a knowing use [of his identity] by defendant."  *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001).  Mr. Tierney will be unable to show any actual knowledge on the part of Moschino.

To satisfy "knowing use," actual knowledge of an unauthorized use is required. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1183 (C.D. Cal. 2002). Mr. Tierney would be unable to show that Moschino knew Mr. Tierney, or that the word "RIME" could be associated with him, or even that the word "RIME" would be associated with anyone at all.  A claim that the word "RIME" appears sporadically, amongst other graffiti tags, in a graffiti themed clothing collection, does not plausibly lead to the conclusion that Moschino knew that Mr. Tierney was associated with "RIME."  It defies logic that a "high-end apparel brand based in Italy," would have knowledge of a graffiti artist living in Brooklyn or that the Brooklyn based graffiti artist was connected to graffiti on an abandoned building in Detroit, or the word RIME appearing on graffiti elsewhere. Mr. Tierney has no probability of prevailing on demonstrating actual knowledge, because there was none.

### 1. Moschino's alleged activities are wholly extraterritorial and, therefore, cannot constitute a violation of § 3344.

Plaintiff's § 3344 claim is entirely premised on the alleged unauthorized use of his fake signature and name on two products that are shown in the Complaint.  (Dkt. No. 1 at

20

¶2).  However, to be actionable under § 3344, the activities need to have occurred in the United States, at a minimum (if not in California).  *Sullivan v. Oracle Corp.,* 254 P.3d 237, 248 (Cal. 2011) (applying the "presumption against extraterritoriality" to unfair competition law).  Plaintiff does not and cannot allege that the products shown in the two photographs were distributed, sold or used in the United States, let alone California.  As such, Plaintiff's § 3344 claim fails.

### 2.   Moschino's alleged use is transformative, and therefore protected by the First Amendment.

As with the Lanham Act claims, Mr. Tierney's misappropriation claims are precluded by the First Amendment under the California Supreme Court's transformative-use defense. *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 808 (Cal. 2001) (noting that works "contain[ing] significant transformative elements [are] especially worthy of First Amendment protection" and exempt from claims under § 3344).  The relevant inquiry for transformative use "is whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question. We ask, in other words, whether a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." (*Id.* at 809.)  As the California Supreme Court has noted, "[w]hen the value of the work comes principally from some source other than the fame of the celebrity—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present to warrant First Amendment protection." (*Id.* at 810).

Thus, even where a defendant has "initially gained some exposure through use of [plaintiff's] name . . . and the reputation it carried," a defendant's use is sufficiently transformative and exempt from § 3344 liability when the primary reason for the success is not "appropriation of plaintiff's name." *Ross v. Roberts*, 166 Cal. Rptr. 3d 359, 368 (Cal. App. 2d Dist. 2013).  In *Ross*, the court found that a rap musician, who created a persona using the "name and reputation" of a cocaine kingpin and selected tales and exploits,

21

1    "add[ed] 'new expression,'" in his musical work. The court further noted that the

2    subsidiary inquiry supports dismissing the claim because "it can safely be assumed that

3    when individuals purchase music, they generally do so in order to listen to music that they

4    enjoy," and it "defie[d] credibility to suggest" that defendant "gained success primarily

5    from appropriation of plaintiff's name and identity, instead of from the music and

6    professional persona that he (and the other defendants) created. *Ross v. Roberts*, 166 Cal.

7    Rptr. 3d 359, 368 (Cal. App. 2d Dist. 2013), *review denied* (Apr. 16, 2014).

8         Thus, any alleged use of the word RIME or Mr. Tierney's alleged fake signature was

9    transformative and therefore protected by the First Amendment.  Even from the two images

10   that Mr. Tierney relies on, the Court can clearly see that in no way is the word RIME the

11   "very sum and substance of the work in question."  As discussed above, the word RIME

12   (along with other graffiti tags) was synthesized in an overall, transformative design.  (Dkt.

13   No. 1 at ¶ 2.)  Mr. Tierney will be unable to prove that any use of the word RIME or Mr.

14   Tierney's alleged fake signature was anything other than a transformative part of the

15   overall work.  Indeed, the word RIME and Mr. Tierney's alleged fake signature is included

16   amongst an overall, graffiti-riddled design surrounded by a plethora of other "graffiti" tags.

17   At most, any alleged use of the word RIME, is used only to create an urban feel in

18   furtherance of the independently creative "idea of putting graffiti—or "street" art—on

19   ultra-expensive clothing."  (Dkt. No. 1 at ¶ 3.)  Like in *Ross*, in which a name and

20   associated reputation was used to create an aura of criminality in the defendant's rap music,

21   here, the alleged use of the word RIME (along with many others) was only used to create

22   an urban aura in Moschino's graphic designs.  Also, going even further than *Ross*, in which

23   the plaintiff's identity was entirely adopted by the defendant, including his name,

24   reputation, and even elements of his life, here Moschino's alleged use of the word RIME is

25   limited only to inclusion in an overall design with other graffiti tags.

26        **3.    Moschino's use is incidental, and therefore not actionable.**

27        Mr. Tierney would be unable to show anything more than "incidental use."

28   "[I]ncidental use of a plaintiff's name or likeness does not give rise to liability" . . .  under

Section 3344." *Yeager v. Cingular Wireless LLC,* 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009). Whether a use falls within the incidental use exception is "determined by the role that the use of plaintiff's name or likeness plays in the main purpose and subject of the work at issue;" "a plaintiff's name is not appropriated by mere mention of it." (*Id.*) In *Algo*, the court found incidental use where the plaintiff's picture was "one of dozens" used and this was "insignificant to the commercial purpose of selling the music anthology." *Aligo v. Time-Life Books, Inc.,* C 94-20707 JW, 1994 WL 715605, at *3 (N.D. Cal. Dec. 19, 1994). Here, similarly, the word RIME was just one of many graffiti tags used to create a graffiti-themed design, and is insignificant to the commercial purpose of creating a collection of high-end clothing by Moschino, one of "fashion's most prominent names." (Dkt. No. 1 at ¶¶ 2, 11.) If Mr. Tierney has any possibility of successfully arguing that the word RIME incorporated into an overall design violates § 3344, this would undermine decades of jurisprudence.

### 4.  § 3344 does not pertain to the use of imitations of identifying features or pseudonyms.

The Ninth Circuit has "construed the statute's protection of 'name, voice, signature, photograph, or likeness' more narrowly than the common law's protection of 'identity.'" *Abdul-Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 414 (9th Cir. 1996) (citations omitted). Thus, the Ninth Circuit has repeatedly held that § 3344 does not protect *imitations* of a plaintiff's identifying features. In *Midler*, for example, the Ninth Circuit construed §3344 to prevent a claim against using an *imitation* of Plaintiff's voice. *Midler v. Ford Motor Co.,* 849 F.2d 460, 463 (9th Cir. 1988). Likewise, in *White*, the Ninth Circuit made clear that an imitation of Plaintiff's likeness was not actionable under § 3344. *White v. Samsung Elect. Am., Inc.*, 971 F.2d 1395, 1397 (9th Cir. 1992). Similarly, here, Mr. Tierney would have no probability of showing that Moschino used his signature, but only an *imitation* of the signature, as he himself calls it a "fake signature." (Dkt. No. 1 at ¶ 2.) This is a black and white issue: either Mr. Tierney can show an exact copy of his "signature" that was copy and pasted into Moschino's design, or his claim necessarily fails. Thus, at most, Mr.

23

1  Tierney's case is limited to use of the name RIME, which for the reasons stated above, is

2  not actionable.

3      In addition, § 3344 protects against the unauthorized use of another's "name." Cal.

4  Civ. Code § 3344(a).  Moschino is accused of using Plaintiff's professional pseudonym,

5  RIME, without authorization.  (Dkt. No. 1 at ¶ 17).  However, Plaintiff cannot show

6  unauthorized use of his real name.  Taking California's misappropriation statute at face

7  value, it does not cover pseudonyms.  In addition, pseudonyms are effectively tradenames

8  that, at best, warrant trademark protection and, therefore, have coverage under the Lanham

9  Act.  Finally, pseudonyms are effectively fake names and, as both the *Midler* and *White*

10 cases have held, § 3344 is not applicable to imitations (i.e., fake version) of identifying

11 information.  For all of these reasons, Plaintiff's misappropriation claim for unauthorized

12 use of the alleged pseudonym RIME also fails.

13     **C.    Moschino is entitled to its attorneys' fees**

14     Under Section 425.16(c)(1), "a prevailing defendant on a special motion to strike

15 shall be entitled to recover his or her attorney's fees and costs."  Thus, Moschino is entitled

16 to an award of attorneys' fees.  Because Moschino has not yet filed a reply brief or prepared

17 or attended the hearing, it asks that the amount of the fee award be reserved for later

18 briefing.

19 **IV.   CONCLUSION**

20     Plaintiff's lawsuit threatens to silence Moschino's lawful exercise of free speech, and

21 Plaintiff cannot establish a probability of prevailing on the merits of his claims.  Plaintiff's

22 lawsuit is therefore subject to a motion to strike under California's anti-SLAPP statute, and

23 Moschino respectfully requests that this Court grant the present motion.

24

25

26

27

28

Dated: October 30, 2015

Tyson K. Hottinger
MASCHOFF BRENNAN LAYCOCK
  GILMORE ISRAELSEN & WRIGHT

By: _/s/ Tyson Hottinger_
Tyson K. Hottinger
Attorney for Defendant

25

**MEMORANDUM ISO MOTION TO STRIKE COMPLAINT PURSUANT TO C.C.P. § 425.16**